NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3213
_____

ALFRED SEIPLE,
INDIVIDUALLY AND ON BEHALF
OF A CLASS OF SIMILARLY SITUATED
INDIVIDUALS,
Appellant

v.

PROGRESSIVE NORTHERN INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. 2-13-cv-01826)
District Judge: Anita B. Brody
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 12, 2014

Before: FISHER, VAN ANTWERPEN and TASHIMA,[*] *Circuit Judges*.

(Filed: June 12, 2014 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

_____

[*]The Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit
Court of Appeals, sitting by designation.

In this automobile insurance contract dispute, we are asked to apply the rules of stacking[1] of underinsured motorist ("UIM") coverage under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. C.S.A. §§ 1701-1799.7,  as set forth by the Pennsylvania Supreme Court in *Sackett v. Nationwide Mutual Insurance Company*, 919 A.2d 194 (Pa. 2007) (*"Sackett I"*), and *Sackett v. Nationwide Mutual Insurance Company*, 940 A.2d 329 (Pa. 2007) (*"Sackett II"*).  The District Court applied the *Sackett* line of cases to the instant matter and, pursuant to a Rule 12(b)(6) motion, dismissed Appellant Alfred Seiple's claim for stacked UIM benefits under his existing insurance policy.  For the reasons set forth in this opinion, we will affirm the order of the District Court.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case.  Therefore, we will set forth only those facts that are necessary to our analysis.

The present action arises from a motor vehicle accident that occurred on May 13, 2012.  At the time of the accident, Seiple was covered under a motorcycle insurance policy that he had originally purchased from Progressive Northern Insurance Company

---

[1] "The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy."  *See Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194, 196 n.3 (quoting *McGovern v. Erie Ins. Group*, 796 A.2d 343, 344 (Pa. Super. Ct. 2002)).

("Progressive") on December 21, 2009. At its inception, the policy covered only one motorcycle and provided for a limited amount of UIM coverage. Pursuant to the MVFRL, Seiple also signed a Waiver of Stacking of UIM coverage limits at that time. The policy was renewed each year.

Seiple added three additional motorcycles to his existing policy between November 2010 and September 2011. Progressive did not ask him to sign a waiver of stacking in any instance, nor did Seiple sign such a waiver. Progressive did, however, issue Seiple an Amended Declarations Page for the addition of each new motorcycle, which listed the motorcycles covered under the policy, as well as an explanation of his coverage.

After the accident, Seiple first filed a claim against the other individual involved in the accident and that individual's insurer. After settling that claim, Seiple submitted a claim to Progressive for stacked UIM benefits under his policy. While the declarations pages of the policy indicated that Seiple rejected UIM coverage, Progressive was unable to produce a signed form of rejection of UIM coverage and, therefore, agreed to provide UIM benefits equal to the bodily injury policy limits of $50,000.

Thereafter, Seiple filed a Complaint in the District Court, claiming that Progressive's offer was insufficient to cover his injuries, and asserting that he was entitled to stacked UIM benefits. Seiple claimed that all of his additional motorcycles were added to his policy via endorsement and, since Progressive failed to obtain additional

3

waivers with each addition, stacking of UIM coverage was mandated by law.

Progressive countered Seiple's claim with a motion to dismiss, pursuant to Rule 12(b)(6), arguing that it was not required to obtain new stacking waivers for each additional vehicle added to the policy by Seiple because they were added pursuant to the policy's after-acquired-vehicle clause. *See* App. at 369a (Pennsylvania Motorcycle Policy Insuring Agreement).

In a memorandum opinion dated July 10, 2013, the District Court granted Progressive's motion to dismiss, concluding that Seiple's new vehicles were added to his policy pursuant to its newly-acquired-vehicle clause, and that the clause is the exact type the Pennsylvania Supreme Court in *Sackett II* opined would not require the insurer to provide the insured with a new opportunity to waive stacked UIM coverage each time a new vehicle was added to a policy. The District Court noted that there was nothing in the record to suggest that Seiple's motorcycles were added to the policy via an endorsement, rather than the after-acquired-vehicle clause, and, even if there was, there was no *per se* rule regarding endorsements in the *Sackett* line of cases.

Seiple's timely appeal to this Court followed.

## II.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

4

We review a district court's dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*. *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013). Under Rule 12(b)(6), "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief[.]'" *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 764-65 (3d Cir. 2013) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).

## III.

On appeal, Seiple maintains the position that Progressive was required to secure a new waiver for each additional vehicle added to the policy, because the vehicles were added by way of endorsement, rather than pursuant to the newly-acquired-vehicle clause. Seiple contends that the District Court ignored this point and incorrectly adopted Progressive's view that his vehicle additions were made pursuant to the after-acquired-vehicle clause. Seiple argues that, as a result, the District Court misapplied the *Sackett* line of cases and erroneously dismissed his claim. [2]

---

[2] In his brief, Seiple also requested that this Court certify the case to the Pennsylvania Supreme Court. We find this course of action to be unnecessary, as the Pennsylvania Supreme Court has already spoken on the issues relevant to the resolution of this case. *See, e.g., Sackett I*, 919 A.2d at 196; *Sackett II*, 940 A.2d at 91; *Craley v. State Farm Fire and Cas. Co.*, 895 A.2d 530 (Pa. 2006). We therefore find that we can confidently decide this matter without certification.

A.

We first consider the District Court's application of the *Sackett* line of cases to the instant matter. Under Pennsylvania law, "the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy . . . does not trigger an obligation on the part of the insurer to obtain new or supplemental [UIM] stacking waivers[,]" . . . unless "coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy[.]" *Sackett II*, 940 A.2d at 334 (noting that *Sackett II* applies in the former instance and *Sackett I* applies in the latter). Pennsylvania law thus makes clear that the inquiry into whether stacking cases are governed by *Sackett I* or *Sackett II*, and consequently whether a new stacking waiver is required, depends upon the scope of the language of the after-acquired-vehicle provision. The District Court determined that the after-acquired-vehicle clause in the instant case was continuous in nature. We will examine that conclusion here.

Seiple's insurance policy defines the term "covered motorcycle" as, among other things, "any additional motorcycle." *See* App. at 369a (Pennsylvania Motorcycle Policy Insuring Agreement). The after-acquired-vehicle provision defines an "additional motorcycle" as:

> [A] motorcycle you become the owner of during the policy period that does not permanently replace a motorcycle shown on the declarations page if:
> (a) we insure all other motorcycles you own;
> (b) the additional motorcycle is not covered by any other insurance policy;

6

> (c) you notify us within 30 days of becoming the owner of the additional motorcycle; and
> (d) you pay any additional premium due.
> An additional motorcycle . . . will have the broadest coverage we provide for any motorcycle shown on the declarations page. If you ask us to insure an additional motorcycle more than 30 days after you become the owner, any coverage we provide will begin at the time you request coverage.

*Id.* Pursuant to this provision, any new motorcycle acquired by an insured during the policy period is automatically covered by the policy, so long as the insured pays any additional premiums and the additional motorcycle is not already covered. The 30-day notification period operates only to determine when coverage for the newly-acquired-vehicle will begin. By its terms, this provision is continuous rather than finite. *See Sackett II*, 940 A.2d at 334 ("To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, . . . *Sackett I* should not disturb the effect of an initial . . . stacking waiver."). We, therefore, agree with the District Court's conclusion that the after-acquired-vehicle clause at issue is continuous, rather than finite in nature.

B.

We now turn to Seiple's contention that the additional vehicles were added to his policy by way of an endorsement, rather than the after-acquired-vehicle clause. Seiple specifically argues that new vehicles are customarily added to an existing policy via an endorsement, which is demonstrated by the issuance of an Amended Declarations Page.

7

According to Seiple, vehicles added by endorsement are governed by another case, *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637 (Pa. Super. Ct. 2010) ("*Sackett III*"), which he claims stands for the proposition that all vehicles added by endorsement require new stacking waivers. We disagree.

"According to Pennsylvania's Insurance Commissioner, the mechanism by which vehicles generally are added to existing policies is via 'newly acquired vehicle clauses.'" *State Auto Property & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 88 n.3 (3d Cir. 2009) (citing *Sackett II*, 940 A.2d at 331, 333 n.4 (affording substantial deference to the Pennsylvania Insurance Commissioner's interpretation in stacking cases)). Seiple offers no support for his contention that his vehicles were added by endorsement beyond his contention that the Pennsylvania Insurance Commissioner was incorrect in its conclusion. As the District Court stated, we are in no position to "determine whether the Commissioner was mistaken . . . and cannot ignore *Sackett II* just on Seiple's say-so."

Furthermore, even if the District Court were to have construed Seiple's vehicle additions as endorsements, Seiple fails to demonstrate that this point would impact the analysis or conclusion in this case. *See Sackett III*, 4 A.3d at 640-41 (analyzing the after-acquired-vehicle clause *first*, and *concluding that the clause was finite*, before analyzing whether the plaintiffs' additional vehicles fit within its plain language). *Sackett III* does not create a *per se* rule, as Seiple suggests, that vehicles added by endorsement require

new stacking waivers without regard to the language in the after-acquired-vehicle clause. We will, therefore, affirm the District Court's rejection of Seiple's endorsement claim.

C.

Given our conclusion above, that the after-acquired-vehicle clause in the instant case is continuous, *Sackett II* governs our analysis and, consequently, our conclusion. Progressive was not required to obtain a new stacking waiver with the addition of each of Seiple's motorcycles. We will, therefore, affirm the District Court's dismissal of Seiple's claim for failure to state a claim for which relief may be granted.

IV.

For the reasons set forth above, we will affirm the order of the District Court.