#29554, #29577-a-JMK
**2022 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOHN F. PAYNE and
ROBIN S. PAYNE,                                    Plaintiffs and Appellants,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GORDON SWANSON
Judge

\* \* \* \*

ADAM BRADSKY
DAVID A. BRADSKY of
Bradsky, Bradsky, and Bradsky, P.C.
Rapid City, South Dakota                          Attorneys for plaintiffs and
                                                              appellants.


HILARY L. WILLIAMSON of
Fuller, Williamson, Nelsen,
    & Preheim, LLP
Sioux Falls, South Dakota                          Attorneys for defendant
                                                              and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 23, 2021
OPINION FILED **01/19/22**

#29554, #29577

KERN, Justice

[¶1.]        John and Robin Payne (the Paynes) were denied uninsured motorist

(UM) benefits under their State Farm personal liability umbrella insurance policy

following a motorcycle accident with an uninsured vehicle in South Dakota.  State

Farm denied coverage for the accident because the policy, first executed in Virginia,

did not include UM coverage.  The Paynes, residents of Florida at the time of the

accident, filed a declaratory action against State Farm seeking payment of

$2,000,000 under Florida's UM statute, which they contend applies to this dispute.

State Farm moved for summary judgment claiming Virginia, rather than Florida,

law applied.  The circuit court denied the motion, concluding Florida law applied to

the dispute.  The Paynes moved for declaratory relief which the court denied,

holding that Florida law only required the insurer of a personal liability umbrella

policy to offer UM coverage when the insured applied for the policy or made a

written request to their insurer for UM coverage, conditions not met by the Paynes.

The Paynes appeal, and State Farm submits a notice of review as to whether

Florida law applies to the Paynes' policy with State Farm.  We affirm.

### Factual and Procedural Background

[¶2.]        John Payne (John) and his wife, Robin Payne (Robin), were riding their

motorcycle in South Dakota on August 8, 2012, when they were in a motor vehicle

accident with an uninsured motorist, Jody Kirk, sustaining significant injuries.  At

the time of the accident, John was covered by a personal liability umbrella policy

(Policy) issued by State Farm.  This Policy, which John first applied for in Virginia,

was effective October 27, 2006, with one-year, automatically renewable terms,

-1-

providing $3,000,000 in personal liability coverage. Under Virginia law, State Farm was not required to include UM coverage nor offer UM coverage for purchase in the Policy.

[¶3.] John and Robin were married on April 30, 2011. In May or June of 2011, the Paynes moved from Virginia to Florida in a recreational vehicle (RV), intending to establish a domicile in Florida while traveling in the RV around the continental United States. At the time of the move, John switched the insurance coverage specific to their motor vehicles, including the motorcycle involved in the accident, from State Farm to GMAC Insurance Company Online, Inc. (GMAC), and National General Insurance Company (NGIC). John kept only his umbrella policy and insurance for some rental properties in Virginia with State Farm. The Paynes set up a private mailbox in Florida at which they received all of their mail. Their mailbox service then forwarded mail to them during their travels as directed.

[¶4.] In October 2011, State Farm mailed a renewal certificate for the Paynes' umbrella policy to the Paynes' private mailbox in Florida. The renewal did not change the terms of the Policy from the original 2006 policy in any way except for an update to the effective dates of the policy, which provided coverage from October 27, 2011 to October 27, 2012. From Florida, John paid the premium for the 2011 renewal online through his bank account at a bank based in Virginia. At the time of the August 8, 2012 accident in South Dakota, the Paynes' Policy, renewed in 2011, was in effect. State Farm denied coverage for the accident, arguing the umbrella policy did not provide UM coverage.

[¶5.] In March 2013, the Paynes filed a complaint against Jody Kirk, Duane Kirk (her father-in-law who owned the uninsured vehicle she was driving), GMAC, NGIC, and State Farm seeking UM benefits for alleged injuries and damages resulting from the accident. As the case progressed, all defendants except State Farm settled or were dismissed from this lawsuit. Regarding their claims against State Farm, the Paynes asserted that under South Dakota's choice of law statute, these claims should be governed by Florida law. They further asserted that State Farm's Policy violated Florida's UM statute. Florida's UM statute (§ 627.727) generally requires insurers to either provide or offer (depending on the type of insurance) UM coverage up to the amount of the policy's bodily injury liability limits or $1,000,000, whichever is less. State Farm's failure to provide or offer this coverage, the Paynes argue, entitles them to full UM coverage of $1,000,000 as a remedial reformation of their Policy contract as required by Florida law. The Paynes further argue that this coverage is stackable[1] in that the Policy was underwritten with two automobile exposures and that coverage should be stacked between the two unidentified automobiles mentioned in the exposures, entitling them to total coverage of $2,000,000.

[¶6.] On October 20, 2015, State Farm filed a motion for summary judgment, claiming that the Policy originated in Virginia and under Virginia law there was no UM coverage available to the Paynes through their Policy for the 2012

---

1.  Coverage being "stackable" refers to the "ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage [than] available under any one vehicle or policy." *Erie Ins. Exch. v. Petrie*, 242 A.3d 915, 917 n.2, (Pa. Super. Ct. 2020); *see also* 12 Couch on Ins. § 169:4 (3d ed.).

motorcycle accident. Judge Jerome Eckrich held a hearing on November 17, 2015, on the motion and denied State Farm's motion in a memorandum decision and order on February 23, 2016. The court held that Florida law applied to this case and that under Florida law, insurers were required to make UM coverage available in certain circumstances when offering an umbrella policy to an insured in Florida, if it was not already included in the policy.

[¶7.] On October 10, 2017, the Paynes moved for declaratory relief stating that they were entitled to stackable UM coverage totaling $2,000,000. Judge Gordon Swanson (hereinafter the circuit court) held a hearing on the Paynes' motion for declaratory relief on December 5, 2017; thereafter, the court issued a memorandum decision denying the Paynes' motion on February 2, 2018. The court observed that, in conformance with Judge Eckrich's summary judgment ruling issued in February 2016, South Dakota's choice of law statute mandated application of Florida law to the Paynes' case. However, the circuit court disagreed with Judge Eckrich's conclusion that "Florida law requires the insurer to make available uninsured motorist coverage when offering an umbrella policy without uninsured motorist coverage in Florida."

[¶8.] Instead, in its memorandum decision denying declaratory relief, the circuit court determined that under Florida law, an insurer offering an umbrella insurance policy need only offer UM coverage at the time of the insured's application for insurance or upon the written request of the insured. Because the Paynes did not apply for their Policy while domiciled in Florida or make a written request for UM coverage from State Farm, the court concluded that State Farm did

not violate Florida's UM statute and that the Paynes were not entitled to UM coverage.

[¶9.]    The Paynes appeal, raising one issue which we restate as follows:

   I.    Whether Florida law requires an insurer to offer uninsured motorist coverage on a personal liability umbrella insurance policy and, if so, whether a noncompliant personal liability umbrella policy should be read and applied as if it complied with Florida law.

[¶10.]    State Farm submits a notice of review, raising one issue which we restate as follows:

   I.    Whether the South Dakota choice of law statute mandates application of Florida law to the Paynes' personal liability umbrella insurance policy.

### Standard of Review

[¶11.]    The applicable standard of review for all issues in this appeal is de novo, as all issues are questions of law. A circuit court's choice of law determination is a question of law and is reviewed de novo. *Burhenn v. Dennis Supply Co.*, 2004 S.D. 91, ¶ 11, 685 N.W.2d 778, 782. Matters of statutory construction are similarly questions of law and are reviewed de novo. *Id.*; *Huber v. Hanson Cnty. Plan. Comm'n*, 2019 S.D. 64, ¶ 10, 936 N.W.2d 565, 569. Finally, "[t]he interpretation of an insurance policy is a question of law, reviewed de novo." *Swenson v. Auto Owners Ins. Co.*, 2013 S.D. 38, ¶ 13, 831 N.W.2d 402, 407.

### Analysis and Decision

[¶12.]    State Farm raises by notice of review the claim that Judge Eckrich's initial determination that Florida law applies to this conflict was erroneous based on the provisions of South Dakota's choice of law statute relating to contracts,

SDCL 53-1-4. State Farm contends that Virginia law (which would deny the Paynes recovery), rather than Florida law, governs the contract because the original 2006 policy was written in Virginia as a Virginia policy. This issue, if decided in State Farm's favor, would render the Paynes' claim that the circuit court erred in its interpretation of Florida law moot. However, because we determine that the Paynes cannot prevail even under Florida law, we need not consider this issue.

[¶13.]     The Paynes contend that, under Florida law, State Farm was required to offer the Paynes UM coverage in accordance with the Florida uninsured motorist statute, Fla. Stat. § 627.727.[2] This statute generally requires insurance companies to offer UM coverage for motor vehicle coverage policies. However, the statute also provides for certain insurance coverage options which do not require provision of UM coverage:

> The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle. However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less.

Fla. Stat. § 627.727(2). In other words, the requirement that UM coverage be provided in every motor vehicle policy is not applicable to *any policy which does not*

---

2.     Fla. Stat. § 627.727 contains subsections (1)–(10). Only the first two subsections are relevant in this appeal and are reproduced in relevant part *infra.*

*provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle.*

[¶14.]    The Paynes' Policy with State Farm is not primary liability insurance and does not include coverage for a specifically insured motor vehicle. For these reasons, Florida law does not require State Farm to have provided UM coverage to the Paynes as part of their Policy. Personal liability umbrella policies, like the Paynes', are specifically excluded from Florida's mandatory UM provision requirement, as they are excess policies, not primary liability insurance policies. *Hooper v. Zurich Ins. Co.*, 789 So. 2d 368, 369 (Fla. Dist. Ct. App. 2001). For this reason alone, the Paynes' Policy is excluded from the Florida statute's UM coverage requirement.

[¶15.]    Furthermore, even if the Paynes' Policy provided primary liability insurance, the Policy does not include coverage for a specifically insured motor vehicle, which is a second requirement for Florida's statutory UM coverage mandate to apply. To be covered, the Paynes' Policy would have had to specifically identify and insure a motor vehicle. *Hooper*, 789 So. 2d at 369. State Farm stated in its statement of undisputed material facts, and the Paynes did not dispute, that the Policy does not identify or specifically insure any motor vehicles.[3] Because the Paynes' Policy was not a primary liability insurance policy and did not include

---

3.    Although the Paynes attempt to use the noted automobile exposures from the Policy to make their stacking argument, the language in the Policy discussing the automobile exposures does not identify or specifically insure any motor vehicles.

coverage for a specifically insured motor vehicle, the requirement to provide UM coverage in Fla. Stat. § 627.727 does not apply to the Policy.

[¶16.] However, under Fla. Stat. § 627.727(2), insurers who are excused from providing UM coverage must still "make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such policy or $1 million, whichever is less." The Paynes contend that in order for State Farm to have complied with this statutory provision, State Farm was required to make UM coverage available when they sent the 2011 renewal contract to the Paynes. However, the plain language[4] of the provision clearly states that the insurer must only make UM coverage available "as a part of the *application* for such a policy, and at the *written request* of the insured." Fla. Stat. § 627.727(2) (emphasis added). The Paynes never filled out an application or in any way applied for the 2011 renewal contract, nor did they request in writing that UM coverage be made available to them. Therefore, State Farm had no obligation to make UM coverage available to the Paynes as part of their Policy.

[¶17.] The Paynes nevertheless contend that the renewal policy mailed to them by State Farm should be construed as an application under *Strochak v. Federal Insurance Company*, 717 So. 2d 453 (Fla. 1998). In that case, the Florida Supreme Court considered a policy that had been originally created in a state other than Florida that was subsequently renewed in Florida. To complete the renewal,

---

4. Well-settled Florida law states that "when a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." *State v. Burris*, 875 So. 2d 408, 410 (Fla. 2004).

the *Strochak* plaintiff was required to fill out a "worksheet" which the Florida Supreme Court determined was effectively an application for purposes of Fla. Stat. § 627.727(2).

[¶18.] But *Strochak* is distinguishable from the Paynes' situation in a number of important respects. The *Strochak* plaintiff was requesting new insurance coverage in the renewal policy and, accordingly, provided information on a form for the insurance company's review. Here, the Paynes were not requesting new insurance coverage with their renewal policy and did not provide further information for State Farm's consideration. The only action the Paynes took while in Florida to secure the continuation of the Policy was to pay the premium. Furthermore, the original policy in *Strochak* differed from the renewed Policy in that it was "issued in the name of a different insured, contained a different policy number and provided different coverage." *Strochak*, 717 So. 2d at 455. The Paynes' renewed Policy was identical to the original Policy with the only change being the term of the Policy. Because the Paynes made no application for a new or modified policy, State Farm had no duty to make UM insurance coverage available to the Paynes as part of their Policy.

[¶19.] The Paynes also contend that Fla. Stat. § 627.727(1) requires that State Farm advise the Paynes annually of the option of purchasing UM coverage. Subsection (1) states in relevant part, "The insurer shall notify the named insured at least annually of her or his options as to the coverage required by this section." This sentence refers to coverage required by § 627.727(1) governing motor vehicle liability policies as a whole. It does not apply to policies excluded from the UM

coverage requirement, as provided in § 627.727(2). As previously discussed, State Farm is not required under subsection (2) to provide UM coverage to the Paynes as part of their Policy. Because the above quoted sentence in subsection (1) requires notification only of "coverage required by this section," and UM coverage in a personal liability umbrella policy with no specifically insured vehicle is excluded from this coverage requirement in § 627.727(2), State Farm had no duty to notify the Paynes annually of their UM coverage options.

[¶20.] While the Paynes urge us to read UM coverage into their State Farm Policy and permit stacking of UM coverage among vehicles, this view could only prevail if we found that Fla. Stat. § 627.727 required State Farm to have provided UM coverage in the Paynes' Policy. Because we determine that Florida law did not require State Farm to provide UM coverage, we do not undertake this analysis. For the foregoing reasons, we affirm.

[¶21.] JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.